5792/Compt

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

CASE NO.

BISCAYNE TOWING & SALVAGE, INC.,

    Plaintiff,

vs.

M/Y PEGASUS 2.0, Hull ID No. CDPP5144J021, its
engines, boats, equipment, machinery, furnishings,
apparel and appurtenances, etc., *in rem*, and
CH BARCO I, LLC, *in personam*,

    Defendants.
_____/

**COMPLAINT FOR MARITIME SALVAGE AND DEMAND FOR ARBITRATION**

COMES NOW the Plaintiff, BISCAYNE TOWING & SALVAGE, INC., and for its Complaint for Maritime Salvage against the M/Y "PEGASUS 2.0", *in rem*, and CH BARCO I, LLC, *in personam*, and alleges as follows:

1. This is a case of admiralty and maritime jurisdiction, within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, and pursuant to 28 U.S.C. 1333.

2. The Plaintiff, BISCAYNE TOWING & SALVAGE, INC. (hereinafter "BISCAYNE"), is a Florida corporation with its principal business office in Miami-Dade County, Florida.

3. The Defendant, CH BARCO I, LLC, upon information and belief is a foreign corporation and is the owner and/or insured of the Yacht M/Y PEGASUS 2.0, at all material times hereto.

1

4. The ***in rem*** defendant vessel, M/Y PEGASUS 2.0, Hull ID No. CDPP5144J021, is a 53-foot 2020 Pardo Yacht.

5. The M/Y PEGASUS 2.0 is presently located, or will be during the pendency of this action, within the Southern District of Florida.

6. This is an action in foreclosure of a maritime lien, according to the general maritime laws, statutes and treaties of the United States.

7. The events described herein took place in navigable waters of the United States, in Miami-Dade County, Florida.

8. All conditions precedent to bringing this action have occurred, have been performed or have been waived.

9. BISCAYNE is a professional salvor engaged in the business of towing, rescue and salvage of vessels. BISCAYNE maintains waterfront facilities for these services. BISCAYNE is affiliated with a national vessel towing service known as TowBoatU.S.

10. On Sunday, July 17, 2022, at 9:12am, Captain Meshach heard a distress call on channel 16 and immediately started making preparations to rescue somebody. The captain of vessel M/Y PEGASUS 2.0 hailed to the US Coast Guard for help stating their vessel had lost all power and was drifting into the rocks at the mouth of the Miami river. The captain took off full speed towards the mouth of the river arriving in 5 minutes, but when he arrived on scene there was no vessel in distress anywhere in the area. The Captain radioed the USCG on channel 16 and requested a vessel position, received clarification that the Captain of the M/Y PEGASUS 2.0 hailed out the position incorrectly and was actually on the rocks in government cut on the south side of the

north jetty. Captain Meshach re-routed his vessel full speed towards Government Cut and arrived promptly at 9:20am. When he arrived at the scene, the M/Y PEGASUS 2.0 was on top of the rocks with the winds and swells pushing it even further up onto the rocks. There was a small craft advisory, the winds were blowing 10-25 kts out of the SSE and swells were 2-4 feet out of the SSE in Government Cut. To further complicate the situation, Captain Meshach observed a large container ship approaching the channel about 250 yards away and knew time was of the essence fearing that the wake from the container ship would have force the M/Y PEGASUS 2.0 onto the top of the rocks, causing it to flip. Besides the damages to the M/Y PEGASUS 2.0 of becoming a total loss, there was the concern for the persons on board the M/Y PEGASUS 2.0 that could be seriously injured or even fatal. Without hesitation Captain Meshach pulled up right next to the M/Y PEGASUS 2.0 and tossed a towline with bridles attached. The captain and mate of the M/Y PEGASUS 2.0 were both very nervous and disoriented. Captain Meshach was successful in avoiding further damage and was able to get the M/Y PEGASUS 2.0 off the rocks. Captain Meshach communicated with USCG Section Miami and towed the M/Y PEGASUS 2.0 and all aboard safely to the boat yard of BISCAYNE. Upon arrival, there were 3 Pardo Mechanics waiting and ready to inspect the vessel for any water intrusion or other damages. Once it was confirmed that the M/Y PEGASUS 2.0 was in good condition on the outside and that the inside cabin/bilges did not have any water intrusion, it was towed by BISCYANE to the haul out at RMK Merrill Stevens on the Miami River.

12. The amount of the claim by BISCAYNE is $108,750 plus interest, court costs, expenses and attorney fees, based upon the factors for maritime salvage set forth in the International Convention of Salvage, 1989 (SALCON 89). Upon information and belief, this amount represents approximately 5% of the post salvage value of the vessel.

14. BISCAYNE has demanded payment of this amount from the owner of the M/Y PEGASUS 2.0, through its counsel, and from its insurance company but no payment has been made to date nor has the owner/insurer agreed to post requested security in the amount of $163,125 as per the terms of the salvage contract (1.5 times the amount of the salvage claim).

15. BISCAYNE is the principal and only salvor who participated in this incident regarding M/Y PEGASUS.

16. A maritime lien claim for salvage services is within the exclusive jurisdiction of the United States District Court.

17. Alternatively, BISCAYNE claims against the in personam Defendant and the M/Y PEGASUS 2.0 for breach of contract to rescue the M/Y PEGASUS 2.0 or for quantum meruit and unjust enrichment for their services.

18. BISCAYNE claims attorney fees from the Defendant as per the attached salvage contract and under general maritime law for bad faith in failing to pay this claim.

**DEMAND FOR ARBITRATION**

19. Paragraph 6 of BISCAYNE's "Standard Form Yacht Salvage Contract," attached as Exhibit "A," states:

> In the event of any dispute regarding this salvage or concerning the reasonableness of any fees or charges due hereunder, all parties agree to binding local arbitration utilizing individual(s) experienced in maritime and salvage law. The Boat Owners of The United States Salvage Arbitration Plan, though not required, is available as a public service through Boat Owners Association of The United States wherever the parties agree to its use. In the event Owner is uninsured for payment of these services, Salvor may, at its election, agree with Owner to use any agreeable arbitration system or to proceed with all available legal remedies to recover sums believed due and owing.

20. Upon the Defendant's posting adequate security BISCAYNE hereby invokes the arbitration provision of the salvage contract and respectfully request that this Court direct the parties to proceed promptly with arbitration, while the Court maintains jurisdiction for any further action which may be required.

21. In order to protect its security interests, particularly as to its *in rem* claim, BISCAYNE requests that this Court order the arrest of the M/Y PEGASUS 2.0 pursuant to the rules of this Court.

WHEREFORE, Plaintiff prays:

a) That process be issued according to the rules and practice of this Court in causes of admiralty and maritime jurisdiction against the M/Y PEGASUS 2.0, Hull ID No. CDPP5144J021, its engines, boats, equipment, machinery furnishings and appurtenances, etc, *in rem,* and against Defendant, CH BARCO I, LLC, *in personam*, citing them to appear and answer all and singular the matters aforesaid;

b) That the M/Y PEGASUS 2.0, its engines, boats, equipment, machinery, furnishings and appurtenances, etc, *in rem,* be arrested and sold by this Court according to the rules and practice of this Court in admiralty and maritime actions;

c) That judgment *in personam* and in *rem* be entered against Defendants, jointly and severally, for the amount of Plaintiffs' claims, with interest, costs, expenses and attorney fees;

d) That Plaintiff has such other relief as may be justified.

February 1, 2023  By:  *S/Michael C. Black*
Miami, Florida

**Michael C. Black, Esquire**
F.B.N. 0056162
mblack@marlaw.com
**MICHAEL C. BLACK, P.A.**
7700 North Kendall Drive, Suite 305
Miami, Florida 33156
Telephone:   (305) 271-8301
Facsimile:    (305) 271-8302
*Counsel for Plaintiff,*
BISCAYNE TOWING & SALVAGE, INC

5817/Verification

# VERIFICATION OF COMPLAINT

STATE OF FLORIDA          }
                          }   SS:
COUNTY OF MIAMI-DADE      }

BEFORE ME, the undersigned authority, personally known to me, personally appeared HARRY C. OFFUTT, IV, who after first being duly sworn on oath deposes and says, that he is the President of BISCAYNE TOWING & SALVAGE, INC. and that he has read the foregoing Complaint Under Rule 9(h) and knows the content thereof, and that the same is true to the best of his knowledge, information and belief. That the source of Affiant's information and the grounds for his beliefs are statements given to him by the salvage captains, the salvage contract, photographs, and other documents and records being standard in the industry.

That Affiant has been authorized to so act.

FURTHER AFFIANT SAYETH NAUGHT.

_____
HARRY C. OFFUTT, IV
President, Biscayne Towing & Salvage, Inc.

SWORN TO AND SUBSCRIBED before me this 30 of January 2023.

_____
NOTARY PUBLIC
Commission Date & Seal

STEFANY NICOLE MARTINEZ
Notary Public-State of Florida
Commission # HH 88161
My Commission Expires
March 29, 2025

1